IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RICARDO M. SUGGS, Jr.**,

      Petitioner,

v.                        Civil Action No. 1:14cv21
                                  (Judge Keeley)

**WARDEN RUSSELL A. PERDUE,**

      Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On March 10, 2014, the *pro se* petitioner, Ricardo Suggs, filed an application for Habeas Corpus pursuant to 28 U.S.C. § 2241. On March 3, 2014, he paid the $5.00 filing fee in lieu of submitting an application to proceed *in forma pauperis*. On April 16, 2014, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an order to show cause was entered against the respondent. On May 21, 2014, the respondent filed a response and Motion to Dismiss or for Summary Judgment. A Roseboro Notice was issued on May 22, 2014, and on June 25, 2014, the petitioner filed his response. This matter is now before the undersigned for a report and recommendation pursuant to LR PL P 2.

### II. Facts

**A. Conviction and Sentence**

On June 6, 2006, in the United States District Court for the Northern District of West Virginia, the petitioner was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) and 924(a)(2). He was released on a personal recognizance bond and the matter was set for trial to begin on July 26, 2006. In the early morning

1

hours of July 21, 2006, one of the government's key witnesses in the case and that witness' mother were shot in their home. Both survived and identified petitioner as the individual who shot them. The July 26, 2006 trial was continued and a superseding indictment filed, again charging petitioner with being a felon in possession of a firearm, along with three new counts related to his tampering with the witness, the shootings and the use of force.  On November 2, 2006, petitioner, through counsel, filed a motion to bifurcate Count One of the superseding indictment from the remaining, later-added counts, requesting separate trials to accomplish petitioner's stated goal of not testifying as to Count One while testifying to Counts Two, Three and Four.  The motion to bifurcate was granted.

On November 8, 2006, after a two-day jury trial on Count One only, petitioner was found guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) and 924(a)(2).

On January 11, 2007, after a three-day jury trial on the three remaining counts, petitioner was found guilty of Count Two, a charge of tampering with a witness - intent to kill, in violation of 18 U.S.C. § 1512(a)(1)(A), and Count Three, tampering with a witness - use of force, in violation of 18 U.S.C. § 1512(a)(2)(A).[1]

On April 16, 2007, petitioner was sentenced to a total term of 324 months imprisonment, the lowest end of the Guideline range, on all three counts, to be followed by a three-year term of supervised release.

## B. Direct Appeal

Petitioner filed a notice of appeal on April 18, 2007.   On appeal, petitioner contended that: (1) the evidence was insufficient to convict him on any of the three counts; (2) the District Court

---

[1] Petitioner was found not guilty of the remaining Count Four: tampering with a witness - corruptly persuade, in violation of 18 U.S.C. § 1512(b)(1).

erred at the first trial on Count One, when it permitted introduction of evidence of the cocaine and marijuana found in his car; (3) the District Court erred at the second trial when it permitted the introduction of certain crime scene photos and a 911 call recording.

On February 19, 2008, the Fourth Circuit Court of Appeals affirmed the petitioner's conviction and sentence in an unpublished *per curiam* opinion. Mandate issued on March 12, 2008. Petitioner filed a petition for writ of *certiorari* with the U.S. Supreme Court which was denied on May 27, 2008.

### III. Petitioner's Argument

The petitioner maintains that recent developments in 18 U.S.C. § 1512 leave him actually innocent. More specifically, the petitioner alleges that he was convicted for witness tampering under § 1512 for conduct that is now non-criminal, lacking the federal nexus. For relief, the petitioner seeks to have his conviction under § 1512 vacated, and his sentence vacated under Alleyne.[2]

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

---

[2]Alleyne v. United States, 133 S.Ct. 2151 (2013).

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon , 943 F.2d 407 (4th Cir. 1991).

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c)(1)(A), show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, a court reviews all evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). It must limit its inquiry solely to a determination of whether genuine issues of triable fact exist. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most

5

favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986)

## V. Analaysis

The primary means of collaterally attacking a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255. A § 2241 petition is used to attack the manner in which a sentence is executed. Thus, a § 2241 petition that challenges a federal conviction and sentence is properly construed to be a § 2255 motion. The only exception to this conclusion is where a § 2241 petition attacking a federal conviction and sentence is entertained because the petitioner can satisfy the requirements of the "savings clause" in § 2255. Section 2255 states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*

28 U.S.C. § 2255 (emphasis added).

The law is clearly developed, however, that merely because relief has become unavailable under § 2255 because of a limitation bar, the prohibition against successive petitions, or a procedural bar due to failure to raise the issue on direct appeal, does not demonstrate that the § 2255 remedy is inadequate of ineffective. In re Vial, 115 F. 3d 1192, 1194 (4th Cir. 1997). Moreover, in Jones, the Fourth Circuit held that:

> §2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions of §2255 because the new rule is not one of constitutional law.

6

In re Jones, 226 F.3d 328, 333-334 (4th Cir. 2000).

In this case, the petitioner asserts that he is actually innocent of violating 18 U.S.C. §§ 1512(a)(1)(A); 1512(a)(2)(A). However, in order to raise a claim of actual innocence under § 2241, the petitioner must first establish that he is entitled to review under § 2241 by meeting the Jones requirements.[3] This the petitioner has not, and cannot, do. Even if the petitioner satisfied the first and the third elements of Jones, the crimes for which the petitioner was convicted remain criminal offenses, and therefore the petitioner cannot satisfy the second element of Jones. Therefore, because the petitioner clearly attacks the validity of his conviction and sentence, and fails to establish that he meets the Jones requirements, the petitioner has not demonstrated that § 2255 is an inadequate or ineffective remedy and has improperly filed a § 2241 petition.

Moreover, the petitioner's claim fails on its merits. The petitioner contends that he "must be granted relief because he was convicted of witness tampering under 18 U.S.C.§ 1512 for conduct that is now non-criminal, lacking the required federal nexus." (Doc. 1-1, p. 5). In advancing this argument, the petitioner relies on Arthur Anderson, LLP v. United States[4], 544 U.S. 696 (2205) and Fowler v.

---

[3] See Bousley v. United States, 523 U.S. 614, 623 (1998) (In order to "open the portal" to a § 2241 proceeding, the petitioner must first show that he is entitled to the savings clause of § 2255. Once those narrow and stringent requirements are met, the petitioner must then demonstrate actual innocence. Actual innocence means factual innocence, not mere legal insufficiency.); see also Herrera v. Collins, 506 U.S. 390, 404 (1993) ( "A claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); Royal v. Taylor, 188 F. 3d 239, 243 (4th Cir. 1999) (federal habeas relief corrects constitutional errors). Thus, a freestanding claim of actual innocence is not cognizable in federal habeas corpus and such claim should be dismissed.

[4] In Anderson, an accounting firm was convicted of obstructing the proceedings of the Securities and Exchange Commission. The Supreme Court held that 18 U.S.C. § 1512 requires a jury instruction for the jury to find a nexus between "the persuasion to destroy documents and any particular proceeding." 544 U.S. at 2136.

United States, [5]131 S.Ct. 2045 (2011). In essence, the petitioner argues that the holdings in these two cases make it impossible to convict a defendant of witness tampering under § 1512 unless he was contemplating a particular existing or foreseeable federal proceeding. The petitioner maintains that these decisions represent a substantive change in law, and there was no such nexus between his alleged violent acts and a particular existing or foreseeable federal proceeding. In advancing this argument, the petitioner alleges that on July 20, 2006, one day before the shooting, he entered into a "quasi contract with the government to plead guilty to the original indictment effectively eliminating the possibility that [he] had 'in contemplation' a particular federal proceeding." (Doc. 1-1, p. 7). It appears that the petitioner is arguing that because he was going to plead guilty to the original indictment, possession of a firearm by a convicted felon, even if he was the shooter, he did not contemplate any particular federal proceeding.

The record from his criminal proceeding reveals that the petitioner, despite his claims otherwise, never had any intention to plead guilty at all. At trial on the witness tampering charges, petitioner testified that on the afternoon before the shootings, he met with counsel and agreed to plead guilty to Count One, because counsel ". . . told me it was the best thing to do." (Doc. No. 178-2, p. 357, Criminal Action No. 5:06cr27). However, on cross-examination, when challenged on the issue by the AUSA, he insisted he had no motive to shoot the witness Sears,[6] because he had already agreed with counsel to plead to the weapon charge. Hence, he argued, because there would be no

---

[5] In Fowler, the defendant was convicted of murder with the "intent to prevent the communication of a federal law enforcement officer about the possible commission of a federal offense." 131 S.Ct. 2045. The Court held that the government must show a "reasonable likelihood that...at least one relevant communication would have been made to a federal law enforcement officer," and the defendant had prevented that communication." 131 S.Ct. 2050.

[6] Sears was the only person who could testify that he had seen petitioner with the gun in his hand, proving actual, rather than constructive possession.

8

trial, there was no need for him to shoot Sears, because Sears would not be testifying against him.[7]

This exchange about the evening before the shootings was had:

Q: Worried about your case coming up in a couple days?

A: No. Like I said we was going to take a plea. There wasn't going to be a trial.

Q: But you didn't take a plea, right?

A: Yeah, because your witnesses didn't give any statements. You need to give me something on paper.

MR. PERRI: Your Honor I am going to ask that the witness - - - that the nonresponsive commentary be struck.

THE COURT: Well, I think it is responsive. The jury can consider it along with all of the other evidence.

(Doc. No. 178-2, p.379, Criminal Action No. 5:06cr27).

The petitioner's own defiant statement, blurted out under oath, establishes that he never actually intended to plead to the original indictment. Apparently petitioner mistakenly believed that without Sears' testimony, he could not be convicted of the felon in possession charge. Not appreciating that he could still be convicted of constructive possession even if Sears was unavailable to testify as to his *actual* possession, he declared he was going to plead, but *never actually did so.* Instead, he immediately set about attempting to eliminate Sears, apparently believing that with Sears out of the way, the Government's case against him on the weapons charge would fall apart, and he would never have had to actually *enter* the plea.

In its decision on appeal, the Fourth Circuit outlined the elements of the crimes and the Government's burden as follows:

---

[7] The shootings occurred in the early morning hours of July 21, 2006. The trial on the original indictment, felon in possession of a firearm, was scheduled for July 26, 2006.

9

To establish a violation of 18 U.S.C. § 1512(a)(a)(A), the United States had to prove that Suggs knowingly attempted to kill Sears and that he did so in order to prevent Sears attendance or testimony at the first trial. See United States v. Rose, 362 Fed 3rd 1059, 1067 (8th Cir. 2004). To establish a violation of 18 U.S.C. § 1512(a)(1)(B), the United States had to prove that Suggs used the threat of physical force with intent of curtailing Sears involvement in the prosecution See United States v. England, 507 F.3d 581, 588 (7th Cir. 2007).

The details of the petitioner's attempt to prevent Sears from testifying were recounted by the Fourth Circuit's decision on appeal:

> Sears testified that on July 5, 2006, he ran into Suggs at a Bar. It was clear to Sears that Suggs knew that Sears had made a statement to the police concerning the firearm offense. The men argued. Suggs insisted to Sears that there had been no guns in the car. Sears replied that he would not lie for Suggs. Sears also testified that on July 21, 2006, he heard a loud bang at the side door and saw an intruder enter his home. The intruder had a silver handgun, which he pointed at Sears head. Sears recognized the intruder as Suggs. Sears said, "No, Ricky, you don't got to do this, Man. I ain't going to go down there. I ain't going to say nothing to the court." Suggs replied, "I told you." Suggs then attempted to shoot Sears, but the gun jammed several times. Rhonda West, Sears' mother, also pleaded with Suggs, saying that no one would testify. Suggs replied, "this ain't got nothing to do with you, Shorty." There was testimony that Suggs often referred to women as " Shorty." Suggs walked around the room, attempting to get a clear shot at Sears, whom West was trying to protect with her body. Suggs eventually fired 2 shots, hitting Suggs [sic] in the forearm and West in the hand. Sears testified that he was certain the intruder was Suggs. Similarly, West knew that the assailant was Suggs, and she addressed him as " Ricky" when begging him not to shoot and promising there would be no testimony. Jamol Alexander testified that on the night of July 20, 2006, he and Suggs went to a Bar. Suggs mentioned that someone had "snitched" on him. Alexander realized that Suggs was speaking of Sears. Then Suggs informed Alexander that he would have to "murk" Sears to prevent his testimony. "Murk" is slang for "murder." Suggs asked Alexander whether he had a gun, and when Alexander replied that he did, Suggs asked to purchase it. Suggs and Alexander left the Bar and drove to Alexander's home, which is in Sears' neighborhood. Suggs asked to ride by Sears' home. The men drove around Sears block twice, and Suggs remarked that Sears was home. Alexander gave Suggs a gun. Suggs told Alexander that he would be paid for the gun if Alexander kicked Sears door in. Alexander kicked the door open and ran away. A few minutes later, Suggs returned to Alexander and announced, "I got

10

him, I shot him and his mom. I think I murked him."

Suggs, 277 Fed. Appx. 258, 262-62.

The Fourth Circuit held that this evidence was sufficient to convict the petitioner on Counts Two and Three of the Superseding Indictment. Suggs, 266 Fed. Appx. 258-262. The Court concluded there was overwhelming evidence that the petitioner was the assailant who broke into Sears' home and shot him and his mother. Id. The Court also held that with respect to Count Two, the evidence conclusively showed that the petitioner attempted to kill to Sears. Id. That petitioner announced to Alexander his intention to murder Sears in order to prevent his testimony at the originally scheduled trial, and he attempted to shoot Sears in the head. Id. With respect to Count Three, the Court found the evidence established that the petitioner use physical force against both Sears and West in an effort to prevent Sears' imminent testimony. Id.

Given that the plaintiff never entered a plea and attempted to kill Sears one day before his trial was scheduled to begin on the original indictment, felon in possession of a firearm, it is clear that the petitioner was attempting to prevent Sears from testifying. Accordingly, the rulings in Anderson and Fowler do not establish that the petitioner is actually innocent of Counts Two and Three of the superceding indictment.

## VI. **RECOMMENDATION**

Based on the foregoing reasoning, the undersigned recommends that the respondent's Motion to Dismiss, or for Summary Judgment (Doc. No. 15) be **GRANTED**, and the petitioner's Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 be **DENIED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the

recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and to counsel of record, as applicable.

DATED: 8-19-2014

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE